915 A.2d 249 (2006)
2006 VT 120
STATE of Vermont
v.
Anthony DEYO.
No. 04-179.
Supreme Court of Vermont.
November 22, 2006.
*251 David W. Gartenstein, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.
Matthew F. Valerio, Defender General, and Henry Hinton, Appellate Defender, Montpelier, for Defendant-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
REIBER, C.J.
¶ 1. Defendant Anthony Deyo appeals his conviction of aggravated sexual assault. Defendant was tried and convicted by a jury of four counts: three counts of sexual assault on his child who was under the age of sixteen and one count of aggravated sexual assault based on repeated nonconsensual sexual acts as part of a common scheme or plan. Defendant appeals the aggravated sexual assault conviction, claiming that the trial court twice erred in instructing the jury on that count. We affirm.
¶ 2. On December 27, 2001, the State charged defendant with three criminal counts of sexual assault on T.D., a minor, for alleged violations of 13 V.S.A. § 3252(b)(1) (prohibiting sexual acts with a person under the age of sixteen who is the actor's child). Nearly two years later, on October 17, 2003, the State amended the information to add a fourth count, aggravated sexual assault, based on "repeated nonconsensual sexual acts as part of the actor's common scheme or plan." 13 V.S.A. § 3253(a)(9).[1] A jury trial was held in December 2003. T.D. testified that between September and December 2001, when she was thirteen years of age, her father had sex with her ten to fifteen times. Prior to trial, defendant had confessed to having sex with his daughter eight to twelve times over the same period, but he later challenged his confession at trial. Defendant was convicted of all four counts, and this appeal followed.
¶ 3. On appeal, defendant raises two claims of error in the trial court's instructions to the jury: (1) in allowing the jury to use one of the incidents of the charged sexual conduct as a predicate for finding the element of "repeated" sexual acts for the aggravated charge; and (2) in instructing the jury that, because the complainant was under sixteen at the time of the alleged sexual acts, the acts were nonconsensual as a matter of law.

I.
¶ 4. Defendant first argues that the trial court committed plain error in violation *252 of double jeopardy principles and legislative intent because its instructions allowed the jury to convict him of aggravated sexual assault based on "repeated" sexual acts by finding, in addition to any acts proved in connection with the three individual counts, that only one uncharged compounding act had occurred.
¶ 5. The trial court instructed the jury on the count of aggravated sexual assault, in pertinent parts, as follows:
These elements are as follows: that between September 11th, 2001 and December 31st, 2001, at Rockingham, the defendant, Anthony Deyo, one, engaged in repeated sexual acts with [T.D.]; two, at a time when his child, [T.D.], was under the age of 16 years; three, and that he intentionally engaged in the sexual acts; four, and that the sexual acts were part of a common scheme or plan. . . . As distinguished from counts one through three, count four does not require that you find that particular acts occurred at particular times. This is in recognition of the difficulty of determining in retrospect the exact time of occurrence of sexual acts. Rather, the State charges that in addition to the three distinct acts, which are the subject of counts one through three, Anthony Deyo engaged in other sexual acts with [T.D.].
Specifically, the State charges that on other occasions, the defendant placed his penis in [T.D.'s] vagina and also that contact occurred between Anthony Deyo's penis and [T.D.'s] mouth, and that contact occurred between Anthony Deyo's mouth and [T.D.'s] vulva. . . . If you find that one or more sexual acts occurred between Anthony Deyo and [T.D.], in addition to any acts proved in connection with counts one through three, the State will have met its burden of proof as to the element of repeated sexual acts. (Emphasis added.)
¶ 6. After delivering the above charge to the jury, but before sending the jury to deliberate, the court conferred with counsel about its instructions pursuant to Rule 30 of the Vermont Rules of Criminal Procedure. After that conference, the court instructed the jury:
I need to make one more refinement, as to my instruction on count four, regarding aggravated child sexual assault. . . . [I]t is important that you be able to unanimously agree that the particular acts, beyond those charged in counts one through three did occur, and that you agree unanimously, what those acts were . . . you all agree on what they were and that they, in fact did occur. (Emphasis added.)
¶ 7. Defendant did not object to the jury instruction, and so we review for plain error. V.R.Cr.P. 52(b); State v. Tahair, 172 Vt. 101, 104-05, 772 A.2d 1079, 1082 (2001). To rise to the level of plain error, any claimed error must both seriously affect substantial rights and have an unfair prejudicial impact on jury deliberations. In re Carter, 2004 VT 21, ¶ 21, 176 Vt. 322, 848 A.2d 281. Such an error exists "only in extraordinary situations where it is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Forant, 168 Vt. 217, 220, 719 A.2d 399, 401 (1998) (quotation omitted).
¶ 8. Defendant argues that the trial court misstated the law when it instructed the jury that if it found "that one or more sexual acts occurred between Anthony Deyo and [T.D.], in addition to any acts proved in connection with counts one through three, the State will have met its burden of proof as to the element of repeated sexual acts," thereby allowing the jury to use one of the single charges as a predicate for a separate aggravated sexual assault conviction based on "repeated" sexual *253 acts. 13 V.S.A. § 3253(a)(9). Even if that instruction amounted to error, we do not find plain error.
¶ 9. We view jury instructions in their entirety in assessing for plain error, Carter, 2004 VT 21, ¶ 21, 176 Vt. 322, 848 A.2d 281, and we find error in a charge "only when the entire charge undermines confidence in the verdict, and only in extraordinary cases. . . ." State v. Carpenter, 170 Vt. 371, 374-75, 749 A.2d 1137, 1139 (2000). There is no plain error "[i]f the charge as a whole is not misleading." Forant, 168 Vt. at 220, 719 A.2d at 401. Instructions that misstate the law at one point but correctly state it multiple times elsewhere, without objection, do not usually give rise to plain error when reviewed as a whole. See, e.g., Carter, 2004 VT 21, ¶ 22, 176 Vt. 322, 848 A.2d 281 (no plain error where jury instruction twice omitted imminence element but explained the element multiple times elsewhere, including immediately after both omissions).
¶ 10. The court instructed the jury that they could find the element of repeated acts to have been proved if they found "one or more" acts in addition to the other counts; however, in the preceding paragraph of the jury charge, the court stated: "in addition to the three distinct acts, which are the subject of counts one through three, Anthony Deyo engaged in other sexual acts with [T.D.]." After the Rule 30 conference, the clarifying instruction, while not entirely illuminating, reinforced the notion that the jury needed to find that more than one additional act occurred. Moreover, in light of daughter's testimony that her father had sex with her ten to fifteen times, we discern no prejudice, because that testimony would have most likely been rejected or accepted in its entirety, leaving the jury to believe that defendant either did not engage in sex with his daughter at all or did so at least ten times. This was not plain error.

II.
¶ 11. Next, defendant argues that the trial court committed plain error when, on the element that the repeated sexual acts be "nonconsensual," it delivered the following instruction to the jury: "As with counts one through three, you must also find that [T.D.] was under the age of sixteen at the time of any sexual act, making such acts nonconsensual as a matter of law." Trial counsel and the court had discussed the instruction at the charge conference and all agreed on the instruction without further objection, so our review is for plain error. V.R.Cr.P. 52(b); supra, ¶¶ 7-8. We do not find any error.
¶ 12. We are not persuaded by defendant's argument that the court "relieved the [S]tate of its burden to prove an essential element of [aggravated sexual assault] beyond a reasonable doubt and improperly directed the jury to convict Mr. Deyo without finding that the alleged repeated sexual acts were `nonconsensual.'" Instead, the trial court instructed the jury as a matter of law on the meaning of "nonconsensual" when the complainant is under sixteen years of age. The complainant's age was not disputed.
¶ 13. Defendant was convicted of aggravated sexual assault for subjecting the victim "to repeated nonconsensual sexual acts as part of the actor's common scheme and plan." 13 V.S.A. § 3253(a)(9). The first three counts  of which defendant was convicted and does not appeal  require only that the defendant engage in a sexual act with his child under the age of sixteen. 13 V.S.A. § 3252(b)(1). Section 3252(b)(1) is silent as to consent, and defendant argues that the trial court wrongly imported the principles of that statute into the aggravated sexual assault count, which includes the *254 explicit "nonconsensual" element. We do not agree.
¶ 14. Our paramount goal in interpreting a statute is to give effect to the Legislature's intent. State v. O'Neill, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996). "The definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear." In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584, 845 A.2d 332 (memo). Where plain and unambiguous, we presume the Legislature intended the express meaning of that language, and we enforce it according to its terms without resorting to statutory construction. Tarrant v. Dep't of Taxes, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999).
¶ 15. The aggravated sexual assault statute requires that the repeated sexual acts be "nonconsensual." 13 V.S.A. § 3253(a)(9). "Nonconsensual" is not defined in the sexual assault statutory scheme, but the nominal form of its opposite, "consent," is defined as "words or actions by a person indicating a voluntary agreement to engage in a sexual act." Id. § 3251(3). Elsewhere, it is commonly understood that "nonconsensual" means the absence of mutual consent. See Webster's New International Dictionary 567 (2d ed.1959) (defining "consensual" as "existing or made by mere mutual consent"). We have further refined the meaning of consent when the complainant is under the age of sixteen and recognized a minor's inability to consent to sexual relations with an adult. State v. Thompson, 150 Vt. 640, 644, 556 A.2d 95, 98 (1989) ("consent by a minor is not legally possible"); Northern Security Ins. Co. v. Perron, 172 Vt. 204, 216, 777 A.2d 151, 160 (2001) ("[M]inors cannot appreciate the nature and consequences of, and therefore lack the ability to consent to, sexual activity for purposes of Vermont criminal law."). Our statements in Thompson and Perron are consistent with the common law that has existed in Vermont since its founding, and with the common law of England, on which our common law was based. See 1 V.S.A. § 271 (adopting the common law of England where such "is not repugnant to the constitution or laws" of Vermont, substantially unchanged since enacted at R. 1787, p. 30); see also State v. Hazelton, 2006 VT 121, ¶ 28, ___ Vt. ___, 915 A.2d 224 (tracing development of the presumption that minors cannot consent to sexual acts). We believe that the long-settled understanding that minors cannot consent to sexual activity in all but limited circumstances renders the statutes in question unambiguously applicable to the facts of this case. The concurrence urges, however, that the statutes should be construed narrowly, to require proof of nonconsent in cases where an aggravated sexual assault charge is based on repeated sexual assaults by an adult on a minor.
¶ 16. It is well settled that statutes in derogation of the common law are to be construed narrowly. See 3 Sutherland Stat. Const. § 61.01 (5th ed.1992) (citing cases). We have held that, where statutes covering a subject are more narrow than the common law, the common law remains in force as to cases outside the scope of the statute. State v. Sylvester, 112 Vt. 202, 207, 22 A.2d 505, 508 (1941). Here, the statutes covering the subject of consent by minors to sexual activity with adults, while they do describe certain instances in which minors can give consent, do not do away with the common law that does not generally recognize consent by minors to sexual activity. Rather, by specifically enumerating those limited circumstances in which a minor can consent, the Legislature has only reinforced its adherence to the common law. Thus, the most reasonable construction of the statutes is *255 that a minor is legally incapable of consenting to sexual intercourse with an adult except in the very narrow circumstances in which the Legislature has explicitly stated that a minor's consent will be effective. See In re M. and G., 132 Vt. 410, 416, 321 A.2d 19, 23 (1974) ("[T]he general principle is that the legislature may fix the time at which persons become competent to do any act or perform any duty.").
¶ 17. If we recognize that under Vermont law a child has no general ability to consent to sexual acts with an adult, such acts must be "nonconsensual" as a matter of law except under the exceptional circumstances defined by the Legislature. Where a statute includes both children and adults in its potential class of complainants, as does aggravated sexual assault based on repeated nonconsensual acts, the legal principle that children cannot consent to sex with adults does not change. What is required to prove that the sexual contact was "nonconsensual" will therefore vary depending on the complainant's age. This accords with the legislative intent behind § 3253(a)(9) which, as we have previously recognized, is that "repeated sexual assaults during an assaultive course of conduct or series of exertions of power will result in harsher punishment." State v. Fuller, 168 Vt. 396, 402, 721 A.2d 475, 480 (1998). Sexual acts between a child and an adult necessarily involve exertions of power: "The legislature, among others, would certainly be surprised to find that sexual assault on a minor does not involve force or aggression, and is consensual, even though consent by a minor is not legally possible." Thompson, 150 Vt. at 644, 556 A.2d at 98 (citation omitted). The logic of Thompson applies, a fortiori, to sexual acts whose victim is the child of the adult perpetrator; the Legislature, having assigned greater penalties to such acts than to other sexual assaults on minors, would be doubly surprised to learn that a minor child can legally consent to sexual contact with his or her parent.
¶ 18. The concurrence argues that the "most obvious" reason our construction of the statute is erroneous is that the penalty for aggravated sexual assault is an "obvious mismatch" with the underlying offense. Post, ¶ 33. Aggravated sexual assault is punishable by a maximum term of life imprisonment or a $50,000 fine. 13 V.S.A. § 3253(b). We do not agree with the concurrence that this penalty "should give us pause in determining the scope of the crime." Post, ¶ 33. First, it is the Legislature that has determined the scope of the crime, not this Court. Second, the three counts of sexual assault of which defendant was convicted each carried a potential penalty of thirty-five years imprisonment and a $25,000 fine. 13 V.S.A. § 3252(b). This certainly evinces a legislative determination that sexual assault of a minor is a very serious matter, to be punished severely even when the contact occurs only once. When the contact occurs more than once, a doubling in the potential fine and an increase in the maximum available sentence from thirty-five years to life hardly give rise to an "obvious mismatch between the punishment and the offense" as the concurrence would have it. Post, ¶ 33. It certainly does not compel a narrow construction that would ignore the widely accepted principle that minors cannot consent to sex with adults. The May 2006 amendments increasing the penalty for sexual assault on one's minor child also militate against the concurrence's reading.
¶ 19. Further, we do not believe that the Legislature intended to impose an additional burden of proving an element of force  to prove aggravated sexual assault, rather than ordinary sexual assault  when the complainant is a child. To prove sexual assault on a minor, the State need produce *256 only "a calendar and the person's birth certificate." State v. Barlow, 160 Vt. 527, 530, 630 A.2d 1299, 1301 (1993). But sexual assault on a minor is limited, by definition, to a class of victims that includes only minors; aggravated sexual assault based on repeated nonconsensual acts applies to both adult and child complainants. What makes the sexual assault aggravated is simply the repeated nature of the conduct. 13 V.S.A. § 3253(a)(9) (sexual assault is aggravated where the victim is subjected to "repeated nonconsensual sexual acts as part of the same occurrence" or to "repeated nonconsensual sexual acts as part of the actor's common scheme and plan"). According to defendant's argument, if the victim were an adult the State would only need to prove that an assault had occurred and that the assault was repeated to show aggravated sexual assault, whereas if the victim were a child it would need to prove that the assault was both repeated and "nonconsensual." We do not believe that the Legislature intended the State to face that added burden when proving aggravated sexual assault against a minor. This approach accords with the "enhanced concern for the protection and well-being of minors and the gravity we attach to crimes involving the exploitation of minors." Barlow, 160 Vt. at 529, 630 A.2d at 1300.
¶ 20. In this regard, the concurrence argues that our interpretation creates an unnecessary inconsistency between the aggravated sexual assault statute and the definition of "consent" in 13 V.S.A. § 3251(3), where the term is defined as "words or actions by a person indicating a voluntary agreement to engage in a sexual act." On the concurrence's reading, or so it appears, a child of thirteen is capable of "voluntary agreement to engage in a sexual act" with her father, insulating the father from prosecution for aggravated sexual assault unless the prosecution shows that the daughter did not give her "actual consent." As we noted in Thompson, this would no doubt surprise the Legislature.
¶ 21. The concurrence places great weight on a line of California cases which, the concurrence urges, establish the proposition that minors are legally capable of consent to sexual acts. Those cases, however, arose from a very different statutory scheme than ours, and are therefore not persuasive. The first case, whose dicta the concurrence reproduces at some length, is People v. Hillhouse, 109 Cal. App.4th 1612, 1 Cal.Rptr.3d 261 (Ct.App. 2003). In Hillhouse the adult defendant was charged with numerous violations of a penal code provision criminalizing sexual contact with persons incapable of giving legal consent because of developmental disability. Id. at 265. The defendant argued, and the trial court agreed, that the provision did not apply to his acts because the victim was a minor and was incapable of legal consent merely by reason of his minority, not "because of" his developmental disability. Id. at 265-66. Rejecting this nimble interpretation, the appellate court relied on 1970 statutory amendments which substantially altered the scheme governing sexual contact with minors in California. Id. at 268. The court noted that, prior to 1970, the California Penal Code, like our own statutes at the time of the offenses in this case,[2] had punished *257 sexual contact with minors without regard to consent. Id. The court further noted that pre-1970 California courts had, "consistent with the way our Penal Code treated such conduct prior to [the amendments]," generally held that "the concept that a minor female could not consent to sexual intercourse justified statutory treatment of the act in the same manner as other types of non-consensual sexual intercourse." Id. In 1970, however, the California Penal Code was amended, and the crime of having consensual sexual intercourse with a minor was removed from the general rape statute. Cal.Penal Code § 261.5. The new offense, unlawful intercourse with a minor, carries lesser penalties than the former statutory rape crime. Id.[3] Nonconsensual sexual acts with minors are, of course, still punishable under California's general rape statute. Id. § 261.
¶ 22. The Hillhouse court went on to cite People v. Tobias, 25 Cal.4th 327, 106 Cal.Rptr.2d 80, 21 P.3d 758 (Cal.2001), which the concurrence also cites, for the proposition that the California legislature, when it created a separate crime of unlawful sexual intercourse with a minor, "`implicitly acknowledged that, in some cases at least, a minor may be capable of giving legal consent to sexual relations.'" Hillhouse, 1 Cal.Rptr.3d at 268 (quoting Tobias, 106 Cal.Rptr.2d 80, 21 P.3d at 762). It bears stating explicitly, given the concurrence's reliance on Hillhouse, that the Vermont Legislature has not done so to the same extent.
¶ 23. The statutory scheme relevant to the instant case reflects a legislative determination that, apart from an exceedingly narrow exception for married people under age sixteen, minors cannot consent to sexual acts in Vermont. Even that exception does not squarely support the concurrence's position, given that minors under sixteen cannot independently consent to the marriage underlying their later ability to consent to sex with their adult spouse. See supra, n. 2. Like the statutory scheme in California before the 1970 amendments, our statutes severely penalize sexual contact by adults with minors without regard to consent and do not contain the carefully drawn, age-specific exceptions now contained in the California Penal Code.[4] Absent the relatively clear *258 legislative direction that compelled the result in Hillhouse, we cannot agree with the concurrence's conclusion that the Vermont Legislature has wholly abrogated the common-law notion that minors cannot consent to sexual contact with adults. See Record v. State Highway Bd., 121 Vt. 230, 236-37, 154 A.2d 475, 480 (1959) ("[W]e are not to presume that the legislature intended to work any change in the common law beyond what the statute itself declares in either express terms, or by unmistakable implication.") (citing State v. Hildreth, 82 Vt. 382, 384, 74 A. 71, 72 (1909)).[5]
¶ 24. Defendant also argues that 13 V.S.A. § 3254 comprehensively defines nonconsent for purposes of the sexual assault statute, and that the principle of "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of another) means that where the Legislature defined particular circumstances in which nonconsent would be presumed, it did not intend to include others. Grenafege v. Dep't of Employment Sec., 134 Vt. 288, 290, 357 A.2d 118, 120 (1976). Section 3254 instructs that in a prosecution for any crime in the sexual assault or lewd and lascivious statutory schemes:
(1) Lack of consent may be shown without proof of resistance;
(2) A person shall be deemed to have acted without the consent of the other person where the actor:
(A) Knows that the other person is mentally incapable of understanding the nature of the sexual act or lewd and lascivious conduct; or
(B) Knows that the other person is not physically capable of resisting, or declining consent to, the sexual act or lewd and lascivious conduct; or
(C) Knows that the other person is unaware that a sexual act or lewd and lascivious conduct is being committed; or
(D) Knows that the other person is mentally incapable of resisting, or declining consent to, the sexual act or lewd and lascivious conduct, due to mental illness or mental retardation as defined in section 3601 of Title 14.
13 V.S.A. § 3254. Defendant's argument is unconvincing, because § 3254 is not an exhaustive list of situations in which lack of consent may be found. Further, the maxim defendant cites has less force when its use would result in derogation of a long-settled common law principle. See 3 Sutherland Stat. Const. § 61.02; accord Record, 121 Vt. at 236-37, 154 A.2d at 480. Section 3254(1) is an open-ended instruction that proof of resistance is not required to withstand a consent defense when that defense is otherwise available. Section 3254(2) simply describes four instances in which, based on some particular knowledge on the part of the actor, that actor is *259 deemed to have acted without consent. We are not persuaded by the argument that, in creating § 3254, the Legislature intended to comprehensively define nonconsent.
¶ 25. Finally, defendant urges us to apply the rule of lenity on the grounds that even if it is arguable that the nonconsensual element does not apply when the complainant is under sixteen years of age, the lack of clear direction from the Legislature means that we should construe the statute in defendant's favor. State v. Sidway, 139 Vt. 480, 484, 431 A.2d 1237, 1239 (1981). We do not find this argument compelling. When statutory provisions unambiguously cover a defendant's conduct, the rule of lenity does not apply. See id. (holding that the hit-and-run statute applied to a defendant despite her claim that she lacked knowledge that she had caused damage). The legal principle that children cannot consent to sexual acts with adults has long been stable, and is not changed by the Legislature's use of the term "nonconsensual" in the modern aggravated sexual assault statute.
¶ 26. It was not error to instruct the jury that sexual acts between an adult and his minor child under age sixteen were nonconsensual as a matter of law. The fair administration of justice does not require that a jury be instructed that the consent defense is available to an adult charged with aggravated assault for repeatedly sexually assaulting his thirteen-year-old child.
Affirmed.
DOOLEY, J., concurring in part and dissenting in part.
¶ 27. In these two cases, State v. Deyo, 2006 VT 120, ___ Vt. ___, 915 A.2d 249, and State v. Hazelton, 2006 VT 121, ___ Vt. ___, 915 A.2d 224, the majority has adopted a convoluted construction of the sexual assault statutes to avoid the obvious conclusion that they say what they mean and mean what they say. To reach this construction, we must also hold that the Legislature adopted the same crime twice, although it used entirely different language in doing so. The construction is inconsistent with basic canons of statutory construction as well as a presumption that the Legislature did not enact duplicative statutes. Thus, I dissent from Part III of the majority opinion in Hazelton, and, although I concur in the result, I disagree with the analysis in Part II of the majority opinion in Deyo.
¶ 28. The consideration of these cases and issuance of these opinions at the same time offers a unique opportunity to reach a consistent and coherent construction of the statutes as related to sexual assault on a minor. Unfortunately, the majority fails to reach the correct construction because it concludes, without any support in the statutory language or evidence of legislative intent, that the Legislature intended to adopt the common law doctrine that a minor cannot consent to a sexual act. Under the language of the statutes, that conclusion is wrong.
¶ 29. In approaching this dissent, I am reminded of the well-worn maxim that when a decision uses the word "clearly," it is a certain signal that the opposite is true. Here, the majority states in Deyo that the "statutes in question unambiguously" apply to this case. 2006 VT 120, ¶ 15. The one thing that is clear about the issue before us is that the statutes do not unambiguously state the rule that the majority reaches. The wording chosen is a strong signal of this point.
¶ 30. The majority's point expressed over and over again in various statements is that because the common law stated that *260 a minor,[6] or a person under ten years of age, cannot consent to a sexual act, therefore a statute using the term "consent" or any of its derivatives must adopt the common law rule. If the majority actually adopted the common law rule, that position would be consistent with the statutory construction rule, cited and centrally relied upon by the majority, that the "common law is changed by statute only if the statute overturns the common law in clear and unambiguous language." Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986). But the rule the majority adopts is actually the following based on the current version of the relevant statute: A person under sixteen years of age cannot consent to a sexual act with another person unless: (1) the person is fifteen years of age and the other person is under nineteen years of age, or (2) the persons are married. This rule is so different from the common law rule that its relationship to the common law rule is barely recognizable. The enormous difference is a demonstration that the Legislature has covered "the entire subject matter" statutorily and the common law is no longer determinative. Id.
¶ 31. With that overview in mind, I will return to the beginning. There are three primary statutes involved in these cases; at the time of the offense they existed in the following versions. The first is 13 V.S.A. § 3252(a), the basic sexual assault statute. It provides:
(a) A person who engages in a sexual act with another person and
(1) Compels the other person to participate in a sexual act:
(A) Without the consent of the other person; or
(B) By threatening or coercing the other person; or
(C) By placing the other person in fear that any person will suffer imminent bodily injury.
Id. The second is the statutory rape statute, also contained in § 3252(a). It provides:
(3) The other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual[.]
Id. The third is the aggravated sexual assault statute, 13 V.S.A. § 3253(a). It provides in relevant part:
(a) A person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances:
. . . .
(9) The victim is subjected by the actor to repeated nonconsensual sexual acts as part of the same occurrence or the victim is subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan.
Id. The maximum penalty for aggravated sexual assault is life imprisonment. Id. § 3253(b).
¶ 32. The statutes are closely related, and must be construed in pari materia, a point on which the majority seems to agree. In developing a complete and consistent *261 construction when applied to minor victims, it is appropriate to start with the aggravated sexual assault statute, the subject of Deyo. The majority construes § 3253(a)(9) to adopt the common law rule that a minor cannot consent to sexual contact.[7] Thus, if the defendant performs repeated sexual acts with a minor in the same occurrence or part of a common scheme or plan, defendant has committed aggravated sexual assault. Under our decision in State v. Fuller, 168 Vt. 396, 402, 721 A.2d 475, 480 (1998), "repeated" means twice.
¶ 33. The majority responds to some reasons why its construction might be erroneous  I consider these below  but ignores the most obvious one. Aggravated sexual assault is a life imprisonment crime, essentially the maximum penalty under our law. This penalty applies to the most heinous of crimes, like murder. To hold that it applies to consensual sexual activity of a male of nineteen years or older and a female under fifteen years is wholly disproportionate to other offenses for which the penalty is reserved. I don't think it is an answer to the extreme nature of the punishment that sexual conduct must occur twice or that conduct that is consensual in fact is deemed nonconsensual by the law. While I recognize that the Legislature, and not this Court, determines the range of permissible punishment for an offense, the obvious mismatch between the punishment and the offense should give us pause in determining the scope of the crime.
¶ 34. On this point, the recent amendment to the sexual assault statutes is relevant. While narrowing the crime of statutory rape, the Legislature lowered its maximum penalty to twenty years in prison from thirty-five years. 13 V.S.A. § 3252(f)(2). At the same time it established a mandatory minimum sentence for aggravated sexual assault, the offense involved in Deyo. That mandatory minimum sentence is normally ten years in jail, but in special circumstances it can be reduced to five yeas in jail. Id. § 3253(c)(1), (2). A person subject to the mandatory minimum cannot have the sentenced reduced "for probation, parole, furlough, or any other type of early release" until the minimum is served. Id. § 3253(c)(1). Thus, while reducing the penalty for one incident of statutory rape, the Legislature has made even harsher the sentence for repeated nonconsensual sexual acts.
¶ 35. The second major objection to the majority's conclusion is it creates unnecessary inconsistencies in statutes that must be read in pari materia. The word "consent," or its derivatives, is used three times in the statutes that define the crime of sexual assault and aggravated sexual assault, the statutes we are considering. It is also defined in § 3251(3) and § 3254. In general, the usage in these statutes is wholly inconsistent with the definition the majority has adopted.
¶ 36. The first inconsistency is with the definition of "consent" in 13 V.S.A. § 3251(3): "words or actions by a person indicating a voluntary agreement to engage in a sexual act." Nowhere does the definition convey that voluntary agreement by a minor is not consent, the holding of the majority. Indeed, the plain meaning of the words is to the contrary. The majority has no explanation for this inconsistency other than that the common law, not the statute, defines consent. Where the Legislature has taken on itself the responsibility of defining consent, that explanation is wrong.
¶ 37. The second, and most important, inconsistency is that the one usage from *262 which the meaning of consent can be determined on the exact question before us is contrary to the majority's holding. Thus, the statutory rape provision, § 3252(a)(3), provides that a person commits sexual assault if the "other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual." (Emphasis supplied.) Obviously, the use of the term "consensual" does not depend upon the age of the victim; if it did, the statute would be nonsensical. It means exactly as the definition in § 3251(3) provides.[8]
¶ 38. The current statute carries forward the usage from the former rape statutes, 13 V.S.A. §§ 3201 & 3202, now repealed. The statutory rape provision, § 3201, criminalized sexual acts by a person over sixteen years of age with a female under the age of sixteen "with or without her consent."[9] The companion provision applicable to a defendant under the age of sixteen years, § 3202, made it a misdemeanor to "carnally know" a female under sixteen years of age "with her consent," and a felony if "by force and against her will." At least as to a minor defendant under sixteen years of age, the consent of the minor victim determined whether a crime had been committed. The use of the term "consent" makes clear that it means consent in fact without regard to her age.
¶ 39. Again, the recent amendment to the statute undercuts the majority's position. The Legislature narrowed the offense of statutory rape so that consensual sexual activity between a child at least fifteen years of age and another person of eighteen years of age or less is not statutory rape. 13 V.S.A. § 3252(c)(2) (2006). In doing so, the Legislature again used the term "consensual" in a context that makes clear it means consent in fact. Thus, under the amendment a fifteen year old is capable of consenting to sexual activity with an eighteen year old, but in the absence of such consent, the sexual activity is statutory rape. Again, the Legislature used the exact term the majority is construing in a way inconsistent with the majority's construction and in a statute that must be read in pari materia with the statute the majority is construing.[10]
¶ 40. Despite the statutory language, virtually all of the majority's rationale is based on cases that apply and explain the statutory rape provision, at least as it existed at some time in the past. The primary precedent is State v. Thompson, 150 Vt. 640, 644, 556 A.2d 95, 98 (1989), stating that "consent by a minor is not legally possible." The language is a description of why consent is not generally a defense to statutory rape. It is not a quote from or construction of the statutory rape statute, or any other statute. No Vermont statute has ever stated that consent by a minor to a sexual act is legally impossible. Indeed, the statutory rape statutes have *263 consistently made clear that consent of the minor victim is possible under specific circumstances and can be a full defense, making the statement in Thompson wrong if read as a description of those statutes. The majority has confused the rationale for a statute with its terms and acted as if the court-derived rationale is statutory language. Thompson and the other similar cases are not "decisions interpreting the very words we are called on to construe in this case," as the majority claims. Deyo, 2006 VT 120, ¶ 23 n. 5. They do not provide support for the majority's construction of consent as it is used in § 3253(a)(9). This conclusion is made particularly clear by the recent amendment that makes the efficacy of consent dependent both on the age of the victim and the age of the perpetrator.
¶ 41. We are not the first court to face the need to make our rhetoric on statutory rape consistent with the statutory language. This question is discussed in detail in People v. Hillhouse, 109 Cal.App.4th 1612, 1 Cal.Rptr.3d 261 (2003), where defendant argued that the statutory crime covering victims incapable of giving consent to sexual acts because of a disability did not apply to a minor victim because the victim was otherwise "incapable of giving legal consent to sexual acts." Id. at 263. In rejecting defendant's argument, the court discussed the dicta in court decisions that minors cannot consent to sexual acts:
In any event, even if we were inclined to do so, we perceive no need to restrictively interpret the language of these provisions, because in our view their plain language creates no impermissible overlap or conflict with the statutory provisions governing sexual contact with minors. Both the trial court and [defendant] have focused on the concept of "legal consent," reasoning that a minor's inability to give legal consent to sexual conduct due to age means that the Legislature could not have meant to include them among those who are unable to give legal consent due to mental disability. However, although common parlance (even that indulged in by courts) tends to suggest that minors cannot consent to sexual contact, none of the statutory provisions which specifically govern that contact says any such thing. To the contrary, the concept of consent, whether legal or actual, is actually irrelevant to the determination of whether those statues [statutes] have been violated.
The statutes . . . make no reference to a minor's ability or inability to consent to sexual contact. They merely implement a public policy making the described acts criminal without regard to such consent.
Id. at 267-68; see also Donaldson v. Dep't of Real Estate, 134 Cal.App.4th 948, 36 Cal.Rptr.3d 577, 588 (2005) (the phrase "age of legal consent" has "passed into lay usage and been incorporated into folk law"). Hillhouse exactly describes the situation before us in this case.[11]
¶ 42. The third inconsistency is with the provisions of § 3254, a statute that provides guidance to determine whether there has been consent, but again fails to mention *264 that a minor cannot consent to a sexual act as the majority holds. The majority's response to defendant's reliance on this section is that " § 3254 is not an exhaustive list of situations in which lack of consent may be found." Deyo, 2006 VT 120, ¶ 24. I agree that § 3254 is not exhaustive and is not intended to comprehensively address the meaning of lack of consent. Id. The latter function is assumed by the definition of consent in § 3251(3), which as discussed above is wholly inconsistent with the majority's holding. The section is, however, instructive.
¶ 43. In part, the section deals with the exact issue before us  the capacity of the victim to consent. Thus, § 3254(2)(A) provides that the defendant acted without consent where the defendant "[k]nows that the other person is mentally incapable of understanding the nature of the sexual act or lewd and lascivious conduct." There is no reason from the language why the lack of mental capacity cannot be caused by young age. Thus, if the majority's conclusion is correct, it is a glaring omission for the statute not to state that the perpetrator's knowledge is irrelevant if the lack of capacity is based upon young age and consent is impossible.[12] See Hillhouse, 1 Cal. Rptr.3d at 266-67 (emphasizing that the similar California statute concerning mental incapacity nowhere indicates that the victim must be an adult). Obviously, the statute relates to consent, in fact, and not consent in law as would be required by the majority's holding.
¶ 44. The third major objection to the majority's construction of "consent" is to the consequences of this construction as reached in Hazelton. The holding of Hazelton is that with respect to a victim under sixteen years of age, § 3252(a)(1)(A) and § 3252(a)(3), two of the statutes quoted above, set forth the same crime so that a defendant cannot be convicted under both. This is true primarily because the element of consent required for a conviction under § 3252(a)(1)(A) is met as a matter of law by the victim's age. Thus, the conclusion of Deyo that consent of a minor is legally impossible is now extended to hold that the Legislature improperly enacted two separate identical crimes and conviction of only one is valid. What Hazelton really demonstrates is that the holding of Deyo is wrong, and the crimes are separate.
¶ 45. I believe that we have rejected the majority's analysis in the early case of State v. Wheat, 63 Vt. 673, 22 A. 720 (1891). In Wheat, the prosecution charged defendant with assault with intent to commit rape by assaulting the victim to carnally know and ravish her against her will. *265 At trial, the prosecution met its proof burden by showing that the victim was under fourteen years of age, then the cut-off age for statutory rape. This Court reversed, holding that the prosecution had to prove that defendant acted without the consent of the victim, irrespective of the victim's age. We held:
The offence of having carnal knowledge of a female person against her will, is distinct from that of having carnal knowledge of one under the age of fourteen with her consent, although both offenses are rape. In the first offence, the question of age is not involved. In the second offence, it is the age of the victim which eliminates the element of consent.
Id. at 675, 22 A. 720 (emphasis added). Under the majority's analysis in Hazelton, the question of age is centrally "involved" to the point that it is determinative.
¶ 46. The majority's reading of Wheat is that the result only occurred because the State charged defendant with rape, not statutory rape, and it was unfair for the prosecution to obtain a conviction without proving lack of consent. That reading is possible only if there is such an offense as nonconsensual rape of a young child, an offense the majority finds is impossible. Thus, under the majority's view of Wheat, the prosecution was required to prove the elements of a noncrime.
¶ 47. More important, the situation in Wheat as described by the majority is exactly the situation present in Hazelton. Over and over again  in opening argument, in closing argument, and in response to defendant's motion to dismiss one of the offenses  the prosecution stated that it had charged defendant with nonconsensual rape, as well as statutory rape, and assumed the burden to prove lack of consent in fact. If the prosecution could assume that burden in Wheat, it could do so here, and the nonconsensual rape charge contained an element  lack of consent in fact  not present in the statutory rape charge. Whether generally or in the context of the actual Hazelton charges, Wheat controls the disposition of Hazelton.
¶ 48. We should reach the same result if we look at the duplicative offense question the majority has decided. As the majority correctly points out, according to the analysis in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), two offenses are considered the same offense for double jeopardy purposes unless each statutory provision "requires [additional] proof of a fact which the other does not." State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998) (citing Blockburger); see Hazelton, 2006 VT 121, ¶ 24 ___ Vt. ___, 915 A.2d 224. For our purposes, the most important aspect of the Blockburger analysis is that where one offense requires proof of a fact that the other does not, "the Legislature is presumed to have authorized cumulative punishment under the two statutory subsections because each subsection is presumed to define a distinct crime." State v. Ritter, 167 Vt. 632, 633, 714 A.2d 624, 625 (1998) (mem.) (emphasis added). It is this presumption of constitutionality that guides our double jeopardy analysis.
¶ 49. The majority claims that although "the differences between the two crimes may be apparent, they are not real." Hazelton, 2006 VT 121, ¶ 26, ___ Vt. ___, 915 A.2d 224. In reaching this holding, the majority says that the "Legislature is free to punish the same conduct under two statutes, but its intent to do so must be clear." Id. ¶ 39, ___ Vt. ___, 915 A.2d 224. It is the corollary of this rule that is the most significant here, that each statute "is presumed to define a distinct crime." Ritter, 167 Vt. at 633, 714 A.2d at 625. If we apply that presumption, we must hold *266 that the nonconsensual rape section, 13 V.S.A. § 3252(a)(1)(A), and the statutory rape provision, id. § 3252(a)(3), do define separate crimes.
¶ 50. The real problem with the majority's analysis is that the corollary, as stated in Ritter, is ignored. Despite the fact that Hazelton and Deyo are issued on the same day, the statutory construction problem is not analyzed with an understanding that the consequence of the statutory construction chosen in Deyo is that the Court must hold that the Legislature has adopted the same crime twice, although in entirely different wording. As Ritter says, the presumption is to the contrary, but that presumption never enters the analysis to suggest a different statutory interpretation  the interpretation in this dissent. As I said at the beginning, the advantage of considering both cases together is that this Court can see the full consequence of each ruling. The full consequence is ignored by the majority's analysis, and the Blockburger presumption as explained in Ritter is also ignored.
¶ 51. The obvious plain meaning of the statutory scheme is that the two subsections define separate crimes because consent in § 3252(a)(1)(A) means consent in fact as defined in § 3251(3). Thus, if an adult defendant commits a consented-to sexual act with another person of age fifteen or less, the defendant is guilty of statutory rape in violation of § 3252(a)(3). If the other person does not consent to the sexual act, and is compelled to participate, defendant is also guilty of sexual assault under § 3252(a)(1)(A). For purposes of this crime, consent is determined by the definition in § 3251(3) and not the age of the other person. In this case, the Blockburger presumption is consistent with the plain meaning of the language. Even if it were not, any ambiguity in the meaning of the statutes should be resolved under the Blockburger presumption.
¶ 52. This construction is consistent with the likely intent of the Legislature. Rather than intending to criminalize the exact same conduct twice, the Legislature drew a distinction between a circumstance where a minor consents to sexual activity without coercion and a situation where a minor is coerced into having sex. The latter is a separate and additional crime because of the presence of the coercion. This interpretation is supported by the presence of the word "compels" in § 3252(a)(1). The majority has read that word out of the statute, holding that each of the alternative elements in § 3252(a)(1)(A), (B) and (C) are alternative methods of compulsion. That may be a fair construction of (B) and (C) because each of these elements involve an element of compulsion. It is not a fair construction of (A), however, if the language means only that the victim is under sixteen years of age, because the majority has read compulsion out of the element. As the majority emphasizes, this is a strict liability crime provable only by "a calendar and the person's birth certificate." State v. Barlow, 160 Vt. 527, 530, 630 A.2d 1299, 1301 (1993); see Deyo, 2006 VT 120, ¶ 19, ___ Vt. ___, 915 A.2d 249. Thus, the Legislature's intent to criminalize only compelled behavior is violated by the majority's construction of § 3252(a)(1)(A).
¶ 53. Finally, I believe the weight of the decisions from other states is consistent with this dissent and not the majority analysis. I say this recognizing that using persuasive authority on statutory construction questions must be done carefully because of differences in statutory language and schemes. In addition to Hillhouse, decisions that are inconsistent with the majority opinion, particularly in Hazelton, include People v. Tobias, 25 Cal.4th 327, 106 *267 Cal.Rptr.2d 80, 21 P.3d 758, 758 (2001)[13] (the antecedent for Hillhouse); Donaldson, 36 Cal.Rptr.3d at 584-89; State v. Cahill, 252 Kan. 309, 845 P.2d 624, 627-28 (1993); Commonwealth v. Duffy, 832 A.2d 1132, 1138-41 (Pa.Super.2003); and May v. State, 919 S.W.2d 422, 423-24 (Tex. Crim.App.1996).
¶ 54. The most persuasive opinion, in a case on point with Hazelton, actually reaches the same result as the majority, but demonstrates what elements are necessary for the result. In State v. Stamper, 197 Or.App. 413, 106 P.3d 172 (2005), the court found that the elements of sexual abuse on a victim who did not consent were met by the age of the victim. Id. at 173. In reaching this conclusion, it recognized that requiring actual consent was "consistent with the ordinary meaning of the relevant terms" of the statute and "consistent with other statutes that suggest that the legislature understands that there is a difference between an actual lack of consent and legal incapacity to consent for any of several different reasons, one of which is the age of the victim." Id. at 177. Nevertheless, the court reached the opposite conclusion for two major reasons. First, Oregon has a statute that provides "[a] person is considered incapable of consenting to a sexual act if the person is . . . [u]nder 18 years of age." Id. at 175, 179-80 (quoting Ore.Rev.Stat. § 163.315(1)(a) and stating that to avoid the statute the court would have to "declare that [it] simply does not mean what it says and cannot be given the effect that it plainly describes"). Second, the majority relied upon specific Oregon legislative history demonstrating that its interpretation was the correct one. Id. at 178-79.
¶ 55. The elements determining legislative intent in Stamper are exactly what the majority does not have here. Stripped of these elements, the plain language of the statutes and every aid to statutory construction is against the construction in Deyo and double jeopardy holding in Hazelton.
¶ 56. Finally, I return to the central rationale of the majority  that its result is compelled by the common law. I agree that central to a resolution of this case is an understanding of how the current sexual assault statutes relate to the common law from which they are derived. I don't agree, however, that implicitly they have imported the common law rule on which the majority relies.
¶ 57. We are in this case engaged in the construction of statutes, and our paramount aim must be to determine the intent of the Legislature. All of the statutory construction rules that the majority cites are aids to determining legislative intent and must be viewed in this light. The ultimate question is whether the Legislature intended to say that consent was impossible for the victim in Deyo and that § 3252(a)(1)(A) and § 3252(a)(3) create the same crime when the victim is a minor.
¶ 58. Like all statutory construction aids, the rules on using the common law reflect a balance between recognizing the common law where the Legislature intended *268 to continue it and recognizing that the Legislature has the duty to define a different course from the common law where it thinks it appropriate. Thus, the rules cited by the majority create presumptions that can be overcome by evidence of what the Legislature actually did and are tempered by rules that counsel against excessive importation of the common law where there is no indication that the Legislature intended it. Thus, we cannot "extend common-law principles to extinguish express statutory language." Hitchcock Clinic, Inc. v. Mackie, 160 Vt. 610, 611, 648 A.2d 817, 819 (1993) (mem.). We can use the common law to interpret undefined words in a statute, State v. Oliver, 151 Vt. 626, 627, 563 A.2d 1002, 1003 (1989), but not where the Legislature defines the words it uses at variance with the common law. Most important for this case, a statute changes the common law if it "attempts to cover the entire subject matter." Langle, 146 Vt. at 516, 510 A.2d at 1303.
¶ 59. If ever there were a situation where the Legislature has sought to cover the entire subject matter of an issue, it is here. At least since the comprehensive reform of the sexual assault statutes in 1977, see 1977, No. 51, the Legislature has intended to cover the entire subject of criminal sexual assault, including statutory rape. By a definition of consent in § 3252(3) and an explanation of how lack of consent can be proved in § 3254, the Legislature has demonstrated that it specifically intended to comprehensively define consent and its relevance in criminal sexual assault cases. Nothing in these statutes provides any evidence that its precise statutory definitions of consent would be supplemented by a common law rule.
¶ 60. This is not a situation where the Legislature has abandoned the common law, and we must insist that it directly state so. Instead, the Legislature embodied the principles of the common law into a comprehensive definition of criminal liability for sexual assault. As I emphasized in the fourth paragraph of this dissent, the majority does not propose to enforce a common law rule; instead it is enforcing a rule it finds in legislative wording. Thus, it is using the common law as a justification for imposing a different statutory construction than that derived from the plain meaning of the statutory sections, the specific definitions the Legislature enacted, and the ordinary rules of statutory construction.
¶ 61. Finally on this point, even if the aids to statutory construction suggested that direction, I would not hold, as the majority has in Hazelton, that the Legislature intentionally voted to criminalize the same conduct twice. This consequence of the majority's statutory construction is strong evidence that the statutory construction is inconsistent with legislative intent.
¶ 62. For these reasons, I disagree with the statutory construction imposed by the majority. Thus, I vote as follows in the two cases before us. In Deyo, the trial court charged that the sexual acts were nonconsensual as a matter of law if the victim was under sixteen years of age. Contrary to the majority holding, I conclude that this instruction was error. Defendant failed, however, to object to the charge, and we can reverse only for plain error. See State v. Percy, 158 Vt. 410, 418, 612 A.2d 1119, 1125 (1992). I agree that there is no plain error here because the sexual acts could not be considered consensual between father and daughter essentially for the reasons stated by the majority in Deyo. See Deyo, 2006 VT 120, ¶ 20, ___ Vt. ___, 915 A.2d 249. The Legislature appears to have adopted this view by defining as a sexual assault a parent's sexual act with his or her child if *269 the child is under eighteen years of age. 13 V.S.A. § 3252(a)(4).[14] "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Oscarson, 2004 VT 4, ¶ 27, 176 Vt. 176, 845 A.2d 337 (internal quotation marks and citation omitted). The error here does not rise to that level. Thus, I concur in the result in Deyo, but not in the reasoning the Court uses to reach that result. I note, in fact, that the majority's construction of 13 V.S.A. § 3253(a)(9) is totally unnecessary given its holding that the child could not consent to sexual acts with her father.
¶ 63. In Hazelton, the majority holds that defendant cannot be convicted of both sexual assault under § 3252(a)(1)(A) and statutory rape under § 3252(a)(3). I disagree. If the sexual act was nonconsensual in fact, the age of the victim is irrelevant under § 3252(a)(1)(A). If the victim is under sixteen years of age, defendant can also be convicted of statutory rape, a separate offense. I dissent from the majority's holding to the contrary.
¶ 64. I also note that even if I agreed with the majority in Hazelton on the meaning of the word "consent" in § 3252(a)(1)(A), I would still dissent from the holding. Although defendant did not acknowledge this in his briefing, the trial court agreed with his position that the offenses in § 3252(a)(1)(A) and § 3252(a)(3) are duplicative for the reasons stated in the majority opinion. The difference, if any, was in the remedy. After ruling in defendant's favor, the trial court held that the duplicative nature of the charges only affected the total sentence that could be imposed, such that the court could only impose two identical concurrent sentences. This is an arguable position in light of our language in State v. Grega, 168 Vt. at 388-89, 721 A.2d at 462-63, because this case does not involve lesser included offenses. After winning on the substance of his argument, defendant failed to object to the remedy the court adopted. Thus, defendant waived this issue.
¶ 65. We do not have to give guidance on this issue in light of the remand. The State has not appealed the ruling favorable to defendant, and it has become the law of the case, right or wrong.
¶ 66. Second, as I note above, even if Wheat holds what the majority says it does, the prosecution in this case affirmatively took on the responsibility to prove lack of consent in fact. Because the prosecution took on that responsibility, the offense it chose to prove under § 3252(a)(1)(A) is clearly different from the offense in § 3252(a)(3) and there are not duplicative convictions for the same conduct  in fact, one conviction is based on the victim's age and the second conviction is based on the lack of actual consent to the sexual act.
¶ 67. The third reason is the most important. The majority's construction of § 3252(a)(1)(A) not only misreads the element of "consent" in the case of a young victim, it totally eliminates the word "compels," which is an element of the offense. The logic of the majority opinion is that the word "compels" adds nothing to "without . . . consent," so it is superfluous. Thus it holds that despite the fact that the statute applies only to a defendant who "compels" the victim to engage in a sexual act without consent, "no actual . . . compulsion is necessary to commit the offense." Hazelton, 2006 VT 121, ¶ 26, ___ Vt. ___, 915 A.2d 224. This holding defies *270 every rule of statutory construction. It totally ignores the plain meaning of the statutory language, either in isolation or in context. See State v. Eldredge, 2006 VT 80, ¶ 7, 910 A.2d 816 (stating that if plain meaning of language is clear, we must enforce it). We reject a construction that renders part of the statutory language superfluous, exactly the result of the majority's construction. In re Margaret Susan P., 169 Vt. 252, 263, 733 A.2d 38, 47 (1999).
¶ 68. In support of its construction, the majority argues that the statute simply defines three different ways that the sexual act can be compelled, State v. Nash, 144 Vt. 427, 433, 479 A.2d 757, 760 (1984), and therefore compulsion is not an element of the offense. That argument makes sense only if the methods are examples of compulsion, and, as noted above, that is a strong argument why the majority's construction of "without consent" is wrong. If I have to accept that construction, however, it has a corollary: the fact that the age of the victim cannot remotely be seen as an example of compulsion undercuts the majority's holding that compulsion is not a separate element of the offense. I would hold that each offense has a separate element and conviction of both is permissible.
NOTES
[1] While this case has been under consideration in this Court, the Legislature has substantially amended and renumbered the statutes governing sexual assault. See 2005, No. 192 (Adj.Sess.), § 10. Those amendments were intended to decrease the incidence of sex crimes in Vermont by "enhancing sentencing and expanding treatment of sexually violent offenders" and "restructuring . . . sentencing for the most serious crimes of sexual violence." Id. § 3. The Legislature increased the penalties for lewd and lascivious conduct with children, for all forms of simple sexual assault, and for aggravated sexual assault. Id. §§ 8, 10 (amending 13 V.S.A. § § 2602, 3252, and 3253, and creating a new section, 3271, mandating indeterminate life sentences for serious sexual offenses). Under the new statutory scheme, the maximum penalty for a single sexual act with the actor's child under age 16 is life imprisonment, rather than 35 years. Id. § 10. References to the V.S.A. in this opinion are to the statutes as they were prior to the May 2006 amendments, which do not apply retroactively to increase the penalties for defendant's conduct. 1 V.S.A. § 214(b)(4); State v. Willis, 145 Vt. 459, 467, 494 A.2d 108, 112 (1985).
[2] We note that our statutes do differentiate, in one provision, between consensual and nonconsensual intercourse with a minor under age sixteen. 13 V.S.A. § 3252(a)(3) (criminalizing sexual acts where "[t]he other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual"). Section 3252(a)(3), read in conjunction with the provisions governing marriage by persons under age sixteen, does not support the concurrence's position strongly, if at all, however. For a minor under age sixteen to marry, the minor must have not only the consent of his or her parents but also a judicial certificate stating "that the public good requires such license to be issued." 18 V.S.A. § 5142(2). This provision suggests that minors under age sixteen are unable to legally consent even to the marriage underlying their "consent" to later sexual activity. This conclusion is buttressed by 15 V.S.A. §§ 512 & 513, which provide that marriages entered into when one of the parties to the marriage is under sixteen are voidable, either by that party themselves or by their parent or guardian. "Thus, at the point when a married minor engages in sex with his or her spouse, the state has already taken steps to protect the minor." Barlow, 160 Vt. at 529, 630 A.2d at 1300.
[3] Under § 261.5, sexual contact with a minor is a misdemeanor if the parties to the contact are within three years in age. Cal.Penal Code § 261.5(b). If the parties are more than three years apart, the offense is a "wobbler," either a felony or misdemeanor, subject to a maximum term of one year in a county jail, id. § 261.5(c). If one party is over twenty-one and the other is under sixteen, the offense is also a wobbler, but exposes perpetrators to a maximum sentence of four years in state prison. Id. § 261.5(d). Parallel provisions institute a graduated system of civil penalties tracking the same hierarchy. Id. § 261.5(e)(1)(A)-(D).
[4] The May 2006 amendments do add, at 13 V.S.A. § 3252(c)(2), an exception where "the [actor] is less than 19 years old, the child is at least 15 years old, and the sexual act is consensual." The concurrence is concerned that our reading of the former statute would lead to future "disproportionate" punishment of actors for consensual sexual activity with minors near their own age. Post, ¶ 33. The new § 3252(c)(2) obviates that concern by decriminalizing a narrow class of such activity.
[5] The concurrence also cites cases from Kansas, Pennsylvania, Texas, and Oregon in support of its interpretation of our statutes. Post, ¶ 53-54. These cases, like Hillhouse, all arise from statutory schemes different from that implicated in the case before us, and should therefore be used only cautiously, if at all, as we interpret our unique statutory scheme. Cf. Proulx v. Parrow, 115 Vt. 232, 236, 56 A.2d 623, 626 (1948) ("In the absence of any decision of our own upon this point the construction placed upon the same or equivalent words in similar statutes of other jurisdiction will serve to shed light upon the problem."). Here, as distinct from Proulx, we have decisions interpreting the very words we are called on to construe in this case. Resort to cases from other states, whose statutes are not similar to our own, is not necessary here.
[6] The rule the majority constantly cites in Deyo  that a minor can't "consent to sexual relations with an adult"  has never been the common law. Putting aside whether the ability of a minor to "consent" is a statement of the common law or a rationale for the crime of statutory rape, a subject covered in detail infra in this dissent, the age element of statutory rape has never been set by the common law as that under the age of majority, and the age of the perpetrator did not matter under the common law. This misstatement of the common law is an example of how the majority keeps falling into "folk law" as its justification. See infra, ¶ 41.
[7] Again, I think it important to emphasize that this has never been the common law.
[8] The majority attempts to explain the marital exception by noting that third parties must give consent to marry. Deyo, 2006 VT 120, ¶ 21 n. 2. The explanation is beside the point. I rely on the marital exception only because it shows that when the Legislature uses the term "consent" and its derivatives, it means consent in fact without importing a common law rule on the ability of persons under a certain age to consent.
[9] The majority in Hazelton points out that this language was in the statute derived from England as part of the common law so it must, by definition, be consistent with the common law principle. I cite it only because it shows that when the Legislature uses the term "consent" and its derivatives, it means consent in fact and that is the usage we must apply to the statutes before us. The fact that the language came from the English statute is irrelevant.
[10] Again, the majority's attempt to explain the marital exception, Deyo, 2006 VT 120, ¶ 21 n. 2, doesn't explain it. Nevertheless, I stand by my point that the explanation is irrelevant.
[11] The majority argues that Hillhouse is inapposite because the California statutory scheme is different. Deyo, 2006 VT 120, ¶ 21. All statutory schemes are different, but the difference between Vermont and California does not undercut the comparison. The point of Hillhouse is that general statements about a minor's capacity to consent to a sexual act are only marginally helpful in interpreting a statute that does not refer at all to a minor's capacity to consent. That point is precisely the critical one here. On that point, the legislative direction in California is no clearer than that in Vermont with its explicit definition of "consent."
[12] The Deyo and Hazelton opinions are inconsistent in their criticism of this point. In Deyo the criticism is that § 3254(2) "simply" describes some instances where the "actor is deemed to have acted without consent." Deyo, 2006 VT 120, ¶ 24. In Hazelton, the criticism is that this dissent has recreated a mistake defense although we have clearly held that no such defense is available in State v. Searles, 159 Vt. 525, 527, 621 A.2d 1281, 1282-83 (1993). See Hazelton, 2006 VT 121, ¶ 30. Deyo is right that § 3254(2) describes instances where the defendant has acted without consent; nothing in this dissent or the statute suggests that it creates or amplifies defenses as charged in Hazelton. The charge that the dissent's construction of the statute appears "to extend the defense of consent to repeated sexual acts between an incestuous parent and an underage child," Hazelton, 2006 VT 121, ¶ 30, sounds more like a charge in a political campaign than anything that could be remotely derived from the language of the dissent. My point is that in describing an instance where lack of consent is deemed to be present as a matter of law, the instance before us in these cases, the Legislature has used language that means that consent must be viewed as consent in fact. Hazelton offers no other interpretation of the statutory language; indeed, no interpretation at all.
[13] The majority in Deyo analyzes Tobias at length to show that it is inapposite because it is based on a clear change of legislative direction adopted in 1970 in California. 2006 VT 120, ¶ 22. In fact, Vermont went through a comparable change of direction in 1977 when it repealed its rape statutes and adopted the current sexual assault statutes. 1977, No. 51. Vermont also went through a recent substantial modification of its statutory scheme when it decoupled its sentencing provisions for statutory rape from those for sexual assault generally. Again, I emphasize that use of cases construing statutes from other jurisdictions must be done carefully, but add that the similarities between the Vermont and California schemes outweigh the differences.
[14] Under the recent amendment, this provision is now § 3252(d).