NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 90

No. 2015-412

| | |
|---|---|
| Agency of Natural Resources | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, |
| | Environmental Division |
| | |
| Hugh McGee & Eileen McGee | April Term, 2016 |

Thomas G. Walsh, J.

Hugh McGee & Eileen McGee, Pro Ses, Brandon, Appellants.

William H. Sorrell, Attorney General, and Robert F. McDougall, Assistant Attorney General, Montpelier, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **EATON, J.** In this environmental enforcement action, the Agency of Natural Resources (ANR) issued a violation and imposed a penalty of $10,000 against defendants Hugh McGee and Eileen McGee for placing unpermitted fill in a Class II wetland. Defendants appealed and, following a site visit and evidentiary hearing, the Environmental Division concluded that the land was not exempt, upheld the violation, and reduced the penalty to $3647. On appeal, defendants argue that the land is used for grazing horses and it therefore meets the requirements of the farming exemption in the wetlands regulations. We conclude that the evidence supports the Environmental Division's finding that the area had not been used consistently to grow food or crops since 1990 and therefore any exemption had expired, and affirm.

¶ 2.     A little background regarding the underlying statutes and regulations is useful to understanding the arguments involved in this appeal.  Pursuant to statute, a permit is generally required before conducting an activity "in a significant wetland or buffer zone."  10 V.S.A. § 913(a).  This broad requirement is tempered in two ways.  First, the definition of wetland exempts certain lands.  Wetlands are defined as areas "inundated by surface or groundwater with a frequency sufficient to support significant vegetation or aquatic life that depend on saturated or seasonally saturated soil conditions for growth and reproduction," but excluding "such areas as grow food or crops in connection with farming activities."  10 V.S.A. § 902(5) (emphasis added).  ANR's wetlands regulations contain a parallel "Farming Exemption," which defines farming activities as "the cultivation or other use of land for growing food, fiber, Christmas trees, maple sap, or horticultural and orchard crops; and the growing of food and crops in connection with the raising, feeding, or management of livestock, poultry, equines, fish farms, or bees for profit." Vermont Wetlands Rules § 3.1(a)(2), Code of Vt. Rules 12 030 026 [hereinafter Wetlands Rules]. The Wetlands Rules specify that the farming exemption has a "Limitation on Exemption," which confines its application to those areas used for farming activities as of the rules' effective date and expires "whenever the area is no longer used to grow food or crops or in ordinary rotation."  Id. § 3.1(a)(3).  Thus, under the statute and applicable regulations, only those areas that have been used for farming activities continuously since 1990 are exempt from regulation as a wetland.

¶ 3.     The second way that the general prohibition on activity in a wetland is narrowed is that the statute authorizes nonpermitted "allowed uses," which are set by rule.  10 V.S.A. § 913(a). The Wetlands Rules list certain activities that are allowed in Class I or Class II wetlands without a permit, but emphasize that these may be conducted only "provided that the configuration of the wetland's outlet or the flow of water into or out of the wetland is not altered and that no draining, dredging, filling, or grading occurs."  Wetlands Rules § 6.  This list includes "[t]he growing of

2

food or crops in connection with farming activities," under certain conditions. Id. § 6.06. Thus, unless an activity takes place in an area exempt from regulation or is an allowed use, it requires a permit. Id. § 9.1.

¶ 4. Here, ANR alleged that defendants violated the Wetlands Rules by placing fill in a Class II wetland without a permit. The Environmental Division made the following factual findings. Defendant Eileen McGee is the sole owner of the 28.36-acre property in Brandon, Vermont. Her former husband, Hugh McGee, is responsible for the daily upkeep of the property. For thirty years, defendants have conducted various farming activities on areas of the property including raising and training horses, raising cattle, haying, and grazing horses. The property spans Smalley Road. On the south side of the road, there are several paddocks and fields close to the road where defendants pasture the horses. South of the paddocks is a pond that provides water for the horses. South and east of the pond is a large Class II wetland. The land south of the pond has been used for grazing horses, but, as the trial court found, only in that the horses were permitted to eat what was attractive to them for forage and was there growing naturally. The ANR enforcement officer testified that the area in question was not being used to grow crops in connection with the management of horses or livestock. The findings and conclusions of the trial court leave no doubt that except for occasional cutting, there was an absence of any soil management practice for pasture land intended to cultivate fertile soils consistent with animal health and water quality.

¶ 5. In August 2013, ANR received a citizen complaint about a possible wetland violation. An ANR enforcement officer visited defendant's land on August 26 and observed Hugh McGee using an excavator to dredge the pond south of the horse paddocks and placing the dredged material on the southern bank of the pond. The enforcement officer spoke to Hugh McGee and explained that it did not appear that his current actions were a violation, but that it would be a

3

violation to place any dredged material in the wetland. He advised Hugh McGee to stop dredging until he could return with a wetlands ecologist. On August 29, the enforcement officer returned with a wetlands ecologist. They observed that material had been pushed into the wetland. That area of the wetland had wild vegetation growing. The brush was chest-high and thick and did not show signs of being cultivated.

¶ 6. In September 2013, ANR issued a notice of alleged violation. In response, Eileen McGee sent a letter stating that the property was an agricultural operation and therefore exempt. In June 2015, ANR issued an administrative order for the violation, ordering removal of the fill and requiring payment of a $10,000 fine. Defendants requested a hearing, claiming they were exempt from the Wetlands Rules because the land was used for farming activities. The matter was heard before the Environmental Division. The court conducted a site visit and heard testimony from the enforcement officer, the wetlands ecologist, and defendant Hugh McGee.

¶ 7. The court concluded that defendants' activities of intermittently cutting the brush and allowing horses to graze in the area did not meet the definition of farming in the statute or the Wetlands Rules. 10 V.S.A. § 902(5) (exempting from definition of wetland "such areas as grow food or crops in connection with farming activities"); Wetlands Rules § 3.1(a)(2) (defining farming activities as "cultivation or other use of land for growing food"). The court explained that the definition of farming entailed some type of cultivation—physical measures applied directly to the soil—and did not include land where vegetation was merely allowed to grow in a random fashion and animals were permitted to graze.

¶ 8. The court further concluded that even if periodic cutting of vegetation and grazing of livestock fit within the meaning of "farming activities" and "cultivation," the evidence failed to show that the activity had been continuous since 1990 when the Wetlands Rules went into effect. See Wetlands Rules § 3.1(a)(3) (limiting farming exemption to those areas used to grow food or

4

crops as of the rules' effective date and explaining that exemption expires "whenever the area is no longer used to grow food or crops or in ordinary rotation"). The court explained that the credible evidence showed that to the extent the area had been managed—by cutting with a brush hog—this was on an intermittent and inconsistent basis. The court cited defendant Hugh McGee's testimony that he intermittently brush-hogged and hayed the land south of the pond, and that at times the area was reclaimed by brush. In addition, the court credited the testimony of the wetlands ecologist that when she inspected the area in August 2013 the brush was chest high and thick and showed no signs of cultivation. Therefore, the court concluded that whatever exemption the land may have had, it was abandoned by the inconsistent nature of the use.

¶ 9. The court additionally held that the activity of putting fill in the wetland was not an allowed use under the Wetlands Rules, which specifically disallowed any use which entailed "draining, dredging, filling or grading." Wetlands Rules § 6. Finally, the court considered various factors and decreased the penalty to $3647.

¶ 10. On appeal, defendants argue that their land has been used continuously since 1976 as a farming operation and it is therefore exempt from regulation under the Wetlands Rules. Defendants list various types of activities they allege amount to farming, including raising and training horses, growing Christmas trees, caring for stray animals, and haying, and assert that at the evidentiary hearing the court agreed that the land was used as a farm. It is important to distinguish, however, between the defendants' property generally and the area of the wetland where the alleged violation took place. While defendants may engage in other activities on the property, the sole use on the area in question was, as defendants testified, that the land was used as pastureland to graze horses. According to defendants, the land was cultivated because it was brush-hogged to keep it open for pasturing horses.

¶ 11.    There are essentially two main questions presented by this appeal.  The first one is legal—whether defendants' activities of brush-hogging and grazing horses on open land not managed for pasture other than mere intermittent and occasional cutting, satisfied the farming exemption as an area that was used to "grow food or crops in connection with farming activities," 10 V.S.A. § 902(5), or used for the "cultivation or other use of land for growing food," Wetlands Rules § 3.1(a)(2).  The second question is factual—whether defendants' "no longer used [the area] to grow food or corps or in ordinary rotation" at a time after 1990 and therefore any exemption expired.  Wetlands Rules § 3.1(a)(3).

¶ 12.    This Court applies a deferential standard of review to the findings made by the Environmental Division.  In re Carrigan Conditional Use & Certificate of Compliance, 2014 VT 125, ¶ 9, 198 Vt. 438, 117 A.3d 788.  Factual findings will not be reversed "unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous."  In re Goddard Coll. Conditional Use, 2014 VT 124, ¶ 4, 198 Vt. 85, 111 A.3d 1285 (quotation omitted).

¶ 13.    Defendants bear the burden of proving that their land is exempt from the wetlands regulations.  See In re Ochs, 2006 VT 122, ¶ 12, 181 Vt. 541, 915 A.2d 780 (mem.) (stating that landowners bore burden of demonstrating that their operation fit within farming exemption and was exempt from Act 250 regulation).  "The farming exemption, like all exemptions, is to be read narrowly and only applied when the facts support the exemption's application."  Id. (discussing farming exemption in Act 250).

¶ 14.    We do not reach the former legal question of whether defendants' activities amounted to farming as defined in the statute and the rule because we conclude that the evidence supports the court's finding that defendants did not consistently use the area "to grow food or crops in ordinary rotation" since 1990.

¶ 15. The evidence concerning the extent to which the area south of the pond had been used was as follows. The wetlands ecologist testified that the area of the wetland where fill was placed was thickly forested. She testified that she did not observe any cultivation of the area for growing food or crops. She stated that there was no indication that the area had been used in a continuous or ordinary rotation for cultivating or maintaining crops because the area was shrubby, very wet, mucky, and thickly forested. Upon being shown a recent photograph of the property, the ecologist explained that the area looked very different in the photograph because the vegetation had been cut back and was no longer the shrub swamp that she had observed.

¶ 16. Defendant Hugh McGee testified that the area to the south and east of the pond had been hayed without much specification as to when that had occurred. He testified that areas of the farm are brush-hogged every year. He also stated that the horses will eat items growing in the wetland including cattails, crabgrass, and trees. He acknowledged that he did not regularly brush hog the entire farm and that the horses would nonetheless graze in the wooded areas. He testified that the area where fill was placed was a location that needed to be taken care of. He admitted there were trees growing in that area and that all he had done in that area was clean some brush. He stated that in that particular area he did not brush hog it every year and that "when it gets too big for using, then when you get around to it, you clean it up." He stated that the horses will still wander in the area and "pick and eat some of it." He acknowledged that the growth of brush does prevent the horses from using the area as pastureland and that is why he needs to go in and clean it out.

¶ 17. Therefore, there was sufficient evidence to support the court's finding that defendants' management of the property in the area of the alleged violation—brush-hogging only —was intermittent and not consistent since 1990. It was up to the trial judge to determine the weight to assign to particular evidence. See In re Eastview at Middlebury, Inc., 2009 VT 98, ¶ 10,

187 Vt. 208, 992 A.2d 1014 (explaining that environmental court as factfinder determines credibility of witnesses and weighs persuasiveness of evidence). Here, it was within the court's discretion as factfinder to credit the testimony of the wetlands ecologist that the brush was overgrown and did not display signs of cultivation.

¶ 18. Defendants assert that the ecologist did not have knowledge of how long the land had been used for farming and that ANR did not do any background checks to determine whether the farm had operated consistently. The ecologist's testimony regarding her observations of the area combined with the testimony of Hugh McGee was sufficient for the court to find that activities in that area were not consistent. The ecologist testified that she was not aware of how long the property had been used for farming and agriculture. She also testified that this portion of the land displayed signs that it had not recently been managed in any way. In addition, defendant Hugh McGee's testified that he had not done any cutting or brush-hogging of that area for several years and sometimes let the area get overgrown. His testimony was consistent with photographs of the area which depicted significant overgrowth. This evidence supported the court's finding the area had not been consistently "used to grow food or crops or in ordinary rotation" since 1990. Wetlands Rules, § 3.1(a)(3). This finding in turn supports the court's conclusion that whatever exemption may have applied had expired and therefore that defendants' property did not qualify for the farming exemption.

¶ 19. Even for land that does not qualify for the farming exemption, some uses are allowed. Wetlands Rules § 6.06 provides an allowed use for "[t]he growing of food or crops in connection with farming activities," with certain restrictions. See Sec'y, Vt. Agency of Nat. Res. v. Irish, 169 Vt. 407, 412, 738 A.2d 571, 578 (1999) (explaining that allowed uses are separate from farming exemption, which requires current and ongoing use of land for growing crops). Defendants assert that their activity of grazing was an allowed use. Here, however, the grazing is

8

not the activity for which the defendants were penalized.  It was the act of placing fill in the wetland.  This activity of placing fill in the wetland is prohibited under § 6, which explicitly states that allowed uses must not include "draining, dredging, filling, or grading."  Wetlands Rules, § 6.  Therefore, defendants' activity, for which the penalty was assessed, was not an allowed use.

¶ 20.    Because defendants do not qualify for the farming exemption and their activity was not an allowed use, the violation was proper.  On appeal, defendants do not challenge the amount of the penalty imposed and therefore we do not address the issue.

Affirmed.

FOR THE COURT:

_____

Associate Justice

9