STATE OF VERMONT

| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 39-3-18 Vtec |
|---|---|
| Champlain Parkway Wetland<br>Determination | DECISION ON MOTIONS |

The City of Burlington ("City") seeks the full complement of permits needed for construction of the Champlain Parkway, a proposed two-lane highway with an associated multi-use path ("Project"). The Vermont Agency of Natural Resources ("ANR") has granted the City permits for the Project's stormwater discharges and its impacts to a Class II wetland, Wetland H/I.[1] In October 2017, Fortieth Burlington, LLC ("Fortieth"), an owner of property near the Project, submitted a complaint to ANR alleging that the Project's stormwater discharges cause impacts to Wetlands G and Y that require a wetland permit.

In the decision that is the subject of this appeal, ANR concluded that no wetland permit was necessary because the City did not propose to "conduct or allow to be conducted an activity" in Wetlands G or Y, or their buffer zones. The Court here considers ANR's motion for summary judgment, which the City joins, asserting its position that no wetland permit is required for any alleged impacts to Wetlands G and Y from the Project's stormwater discharges.[2]

Judith L. Dillon, Esq., appears on behalf of Fortieth. Hannah Smith, Esq., and Randy J. Miller, II, Esq., represent ANR. Brian S. Dunkiel, Esq., and Jonathan T. Rose, Esq., represent the City.

---

[1] As discussed further below, ANR's decision to approve the renewal of the City's amended stormwater discharge permit is the subject of a concurrent appeal pending before this Court. See Champlain Parkway SW Discharge Permit, No. 76-7-18 Vtec.

[2] The City joins ANR's motion and its reply in support of the motion. The City also writes separately to submit additional evidence and comment on certain discrete issues. While this Court largely considers their arguments to be aligned, we note the City's additional commentary where relevant.

## Legal Standard

A moving party will prevail on summary judgment if there is no genuine dispute of material fact and they are entitled to judgment as a matter of law. V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). A party asserting that a fact cannot be disputed or, conversely, that a fact is genuinely disputed, must support that assertion with admissible evidentiary material. V.R.C.P. 56(c); White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999). In evaluating factual assertions, we draw all reasonable inferences and resolve all reasonable doubts in the nonmoving party's favor. Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 212 (2001) (citation omitted). Conclusory statements of fact, or disputes that are not material, do not preclude a decision on summary judgment. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 41, 176 Vt. 356.

## Factual Background

We recite the following facts for the sole purpose of resolving the pending motions. These are not factual findings, which can only be reached after a trial. Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1.    Fortieth owns property along Lakeside Avenue in Burlington, Vermont, near the two wetlands at the center of this appeal, Wetlands G and Y.

2.    The City proposes construction of the Champlain Parkway Project, a two-lane highway with accompanying recreational, traffic, and stormwater development in Burlington, Vermont.

3.    The Project would connect I-189 to Lakeside Avenue, then follow Lakeside Avenue east and Pine Street north to Main Street in Burlington's City Center District.

4.    The Project does not involve any construction in Wetlands G and Y or their buffer zones.

5.    Over the past few years, the City has applied for and received a number of environmental and land use permits for the Project.

### The City's Stormwater Discharge Permit

6.    On March 23, 2012, the City applied to amend its stormwater permit for the Project's stormwater discharges. The amendment application requested coverage of additional stormwater discharges from the Project into the Pine Street Barge Canal watershed.

7.    ANR granted the City the amended permit on October 11, 2012.  This decision was not appealed.

8.    Under the permit, stormwater from the Project will discharge from three points.  At one of these points, called "S/N 003," stormwater will be treated according to the permit conditions. The stormwater from S/N 003 will then discharge into the Pine Street Barge Canal.

9.    Wetlands G and Y are proximal to the Pine Street Barge Canal.

10.    Stormwater discharges from the Project will likely flow into Wetlands G and Y to some extent.[3]

11.    ANR has not formally assessed whether Wetlands G or Y are significant, or Class II, wetlands.

12.    The Project's stormwater management plan does not entail any treatment practices, or construction of any stormwater infrastructure, in Wetlands G and Y or their buffers.

13.    The City applied for renewal of its stormwater discharge permit on September 15, 2017.

14.    ANR issued the renewal on June 19, 2018, and Fortieth appealed that decision to this Court on July 18, 2018.  The permit is currently the subject of a separate pending appeal before this Court.  See Champlain Parkway SW Discharge Permit, No. 76-7-18 Vtec.

*The City's Wetland Conditional Use Determination*

15.    The City applied for a wetland Conditional Use Determination ("CUD") in 2010 for impacts to Wetland H/I and its buffer zone.

16.    The City's CUD application contained a map showing Wetland H/I, the surrounding area, and Wetlands G and Y.

17.    ANR issued the City the CUD permit on January 14, 2011.  No appeal followed.

18.    The City requested an extension of the CUD permit in 2015.

19.    ANR, this Court, and the Vermont Supreme Court approved the extension.  See Champlain Parkway Wetland CU Determination, No. 123-10-16 Vtec (Vt. Super. Ct. Envtl. Div. Apr. 14, 2017) (Durkin, J.); In re Champlain Parkway Wetland Conditional Use Determination, 2018 VT 123.

---

[3] Given the summary judgment standard, for purposes of the present motion we assume that stormwater from the Project will reach Wetlands G and Y.  Because the parties dispute whether stormwater impacts to a wetland that derive from development outside of the wetland require a wetland permit, the question of whether or to what extent the Project's stormwater impacts Wetlands G and Y is not material to the ultimate legal question before us.

3

20.     While Wetlands G and Y were considered tangentially in the CUD determination, they are not addressed in the CUD permit and did not play a part in the extension decision.

*The Present Appeal*

21.     On October 23, 2017, Fortieth sent a letter to ANR requesting that ANR require the City to obtain a wetland permit to cover alleged impacts to Wetlands G and Y from the Project's stormwater discharges, or prohibit those discharges.  Fortieth's letter included a memorandum drafted by Vanasse Hangen Brustlin, Inc., entitled "Champlain Parkway – Wetland Impact Review."

22.     ANR responded to Fortieth's request on February 27, 2018.  ANR determined that a wetland permit was not required for the City's stormwater discharges because the City did not propose to conduct any activities in Wetlands G or Y as part of the Project.

23.     Fortieth appealed ANR's decision to this Court on March 29, 2018.

**Discussion**

ANR and the City move to dismiss all nine Questions in Fortieth's Statement of Questions. Questions 1, 2, 3, 6, 7, and 8 are all variations on the question of whether the Project's potential stormwater impacts to Wetlands G and Y require a wetland permit.  ANR and the City assert that no wetland permit is necessary because ANR's wetland permitting jurisdiction is only triggered by development, construction, or other physical activities within the boundaries of a wetland or wetland buffer.  Fortieth contends that impacts to wetlands require wetland permits, including impacts resulting from stormwater discharges.  In support of their respective positions, the parties advance competing interpretations of 10 V.S.A. § 913(a), which prohibits certain activities in a wetland without a permit.

Question 4 raises the issue of whether the City must show that the Project's stormwater discharges will not have an undue adverse effect on the protected functions and values of Wetlands G and Y.  If so, Question 5 asks whether the City has met its burden in making such a showing.  ANR and the City offer that these Questions relate to the standards that applicants must meet for a wetland permit and, because no wetland permit is required, these standards do not apply to the Project.

4

Question 9 inquires broadly into the Project's compliance with 10 V.S.A. § 913, the Vermont Wetland Rules ("VWR"), the Vermont Water Quality Standards ("VWQS"), and the Clean Water Act ("CWA"). ANR and the City assert that because no wetland permit is required for the Project's stormwater discharges, § 913 and the VWR do not apply; that the City's amended stormwater discharge permit ensures that the Project's stormwater complies with the VWQS; and that the wetlands provisions in the CWA are not relevant to this matter.

As a threshold matter, we consider whether ANR's interpretation of the relevant statutory and regulatory sections is entitled to deference, in order to determine the scope of our review on appeal.

## I.     Whether the interpretation ANR offers is entitled to deference.

This Court considers ANR decisions *de novo* when providing appellate review, meaning we afford no deference to the appealed-from ANR decision itself. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); Bradford Oil Prop. 'CAP', Nos. 139-10-13 Vtec, 307-5-06 Wncv, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Dec. 22, 2014) (Walsh, J.) (citation omitted). However, in certain circumstances, even in our *de novo* review, we defer to ANR's construction of the regulations and statutes it administers within its area of expertise. See In re ANR Permits in Lowell Mountain Wind Project, 2014 VT 50, ¶ 11, 196 Vt. 467. When these circumstances arise, "[a]n agency's authority to define terms within its statutory purview will be given deference unless that authority is applied 'arbitrarily and capriciously' such that it 'give[s] rise to a violation of due process.'" In re Korrow Real Estate, LLC Act 250 Permit Amendment Application, 2018 VT 39, ¶ 21 (citing Woodford Packers, Inc., 2003 VT 60, ¶ 17, 175 Vt. 579).

Deference to an agency can be appropriate where a statutory term or phrase the agency is charged with applying is undefined and ambiguous. Levine v. Wyeth, 2006 VT 107, ¶ 31, 186 Vt. 76 (citing Chevron U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 844 (1984)); Town of Killington v. State, 172 Vt. 182, 189, 192 (2001); cf. Champlain Parkway Wetland Conditional Use Determination, 2018 VT 123, ¶ 15 n.6 (deviating from traditional deference when interpreting permit conditions because the plain language was clear and ANR's expertise was not implicated). Deference can also be owed when the Legislature provides the agency with wide discretion to implement the law in question because of the agency's expertise, familiarity with interrelated

regulatory provisions, and authority to author further regulations under the statute. See Mollica v. Div. of Prop. Valuation & Review, 2008 VT 60, ¶ 11, 184 Vt. 83 (construing Killington, 172 Vt. at 192); see also In re Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Jan. 25, 2008) (Wright, J.) (citing Bacon v. Lascelles, 165 Vt. 214, 218-19 (1996)).

With regards to ANR's own regulations, the Vermont Supreme Court has acknowledged the "substantial deference" owed to "ANR's interpretation of the regulations governing the wetland and stormwater discharge permits at issue." In re Costco Stormwater Discharge Permit, 2016 VT 86, ¶ 5, 202 Vt. 564; see also ANR Permits, 2014 VT 50, ¶ 15 (affording deference to ANR's interpretation of stormwater regulations).

In the matter at hand, the parties offer distinct interpretations of the same statutory language in 10 V.S.A. § 913(a). We conclude that the language is ambiguous.

ANR is charged with administering the statutory provisions related to wetlands, as well as the related stormwater provisions. See 10 V.S.A. § 905b(18) (wetlands); 10 V.S.A. § 1264 (stormwater management). Also, ANR's proffered construction is consistent with its routine position in cases involving similar subject matter. See, e.g., In re Costco Stormwater Discharge Permit Application, Nos. 75-6-12 Vtec, et al. (Vt. Super. Ct. Envtl. Div. Aug. 27, 2015) (Durkin, J.); Sec'y v. Persons, No. 97-6-10 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Aug. 1, 2012) (Durkin, J.); Agency of Nat. Res. v. Wellman, No. 2004-314, slip op. at 1-2 (Vt. Nov. 2004) (mem.).

Given ANR's expertise, its consistency, and its familiarity with the regulatory scheme surrounding wetlands and stormwater, this Court concludes that ANR's interpretation of the undefined and equivocal statutory language is entitled to deference.[4] Because of this deference, we will not disturb ANR's construction unless further analysis reveals it to be "irrational and unreasonable in relation to its intended purpose." Korrow, 2018 VT 39, ¶ 21 (citing Plum Creek Me. Timberlands, LLC, 2016 VT 103, ¶ 28, 203 Vt. 197).

---

[4] The fact that ANR consulted a dictionary in support of its interpretation does not undermine the justifications for affording it deference. See In re Williston Inn Grp., 2008 VT 47, ¶ 12-15, 183 Vt. 621 (awarding deference to an agency's interpretation of a term even where the agency relied, in part, on dictionary definitions).

**II.     Whether the potential impacts of the Project's stormwater discharges on Wetlands G and Y require a permit.**

With this in mind, we next consider the legal question underlying this appeal: whether any impacts to Wetlands G and Y that may result from the Project's stormwater runoff require the City to apply for a wetland permit. As indicated, the parties' arguments hinge on the interpretation of 10 V.S.A. § 913(a). The statute mandates:

> Except for allowed uses adopted by [ANR's Department of Environmental Conservation] by rule, no person shall conduct or allow to be conducted an activity in a significant wetland or buffer zone of a significant wetland except in compliance with a permit, conditional use determination, or order issued by the Secretary [of ANR].[5]

ANR asserts that § 913(a) and the regulatory provisions that implement it require a wetland permit only when construction, development, or other physical activity is proposed within a delineated wetland or its buffer. In ANR's construction, to "conduct or allow to be conducted an activity" in a wetland means to physically act within the boundaries of the wetland or its buffer. The paradigmatic examples would be construction, filling, or dredging within the wetland. Stormwater impacts that may result from construction activity carried on outside of the delineated wetland boundary are not included in ANR's interpretation.

Fortieth argues that the statutory language should be read more broadly to require a wetland permit for stormwater discharges to a wetland from a development occurring outside of the wetland.

To determine whether ANR's construction is rational and reasonable, we apply the traditional canons of statutory interpretation. Our ultimate goal in interpreting any statute is to give effect to the intent of the Legislature. In re Ambassador Ins. Co., 2008 VT 105, ¶ 18, 184 Vt. 408. While we first consider the plain meaning of the relevant language—and presume that the Legislature intended the plain, ordinary definition for each word employed—when that language

---

[5]  Implementing 10 V.S.A. § 913, the VWR state: "Activity in a Class I or Class II wetland or its associated buffer zone is prohibited unless it is an allowed use or authorized by a permit, conditional use determination or order issued by the Secretary." See VWR § 9; see also 3 V.S.A. § 845(c) ("Nothing in this chapter: . . . allows an agency by rule to require permits . . . unless specifically authorized by other law.").

is ambiguous, we consult other interpretive tools. In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 22, 199 Vt. 19 (citing Evans v. Cote, 2014 VT 104, ¶ 13, 197 Vt. 523).

Moving beyond the plain language, this Court observes the rule that "[t]he words of a statute are not to be read in isolation, but rather in the context and structure of the statute as a whole." In re Vt. Verde Antique Int'l, Inc., 174 Vt. 208, 211-12 (2002). In a similar vein, all relevant parts of the applicable statutory scheme are to be construed together to ensure they function harmoniously. In re Estate of Cole, 2004 VT 17, ¶ 10, 176 Vt. 293 (citations omitted). To this end, we do not construe a statute in a way that renders a significant part of it or a related statute pure surplusage. Id.; In re Lunde, 166 Vt. 167, 170 (1997) (quoting Trombley v. Bellows Falls Union High Sch., 160 Vt. 101, 104 (1993)).

As noted above, the parties' competing interpretations, as well as our own analysis, reveal that 10 V.S.A. § 913(a) defines the activities that require a wetland permit with some ambiguity. Further, the phrase "conduct or allow to be conducted an activity" is not defined in the statute or regulations, and neither are the words comprising it. Accordingly, we must consider other aspects of the regulatory framework to evaluate whether a construction project outside of a wetland that releases stormwater reaching the wetland necessitates a wetland permit.

We first observe that the Project's stormwater discharges are already subject to the requirements of Vermont's stormwater permitting program, which is separate and apart from wetland permitting. This demanding regulatory review requires compliance with the VWQS and CWA. See 10 V.S.A. § 1264(h). Further, before any of the Project's stormwater discharges into any waters of the State, it must meet the treatment requirements of the Vermont Stormwater Management Manual, which are designed to protect the quality and capacity of receiving waters, including impacted wetlands. Because stormwater impacts are regulated through this alternative means, ANR's interpretation avoids redundancy in the stormwater and wetland permitting schemes. See Town of Granville v. Loprete, 2017 VT 101, ¶ 14, 206 Vt. 21 (stating that the Court "presumes that the Legislature does not intend to enact meaningless legislation," so "when we construe a statute, we must do so in a manner that will not render it ineffective or meaningless." (internal quotations and citation omitted)); see also State v. Deyo, 2006 VT 120, ¶ 27, 181 Vt. 89 (Dooley, J., concurring in part and dissenting in part).

8

Turning to the statutory language itself, Fortieth directs the Court to the first clause in § 913(a), which exempts "allowed uses adopted by the Department by rule" from the wetland permit requirement. Per the statute, the VWR define a number of allowed uses. See generally VWR § 6. These uses are allowed in a Class I or II wetland or buffer zone without a permit as long as "the configuration of the wetland's outlet or the flow of water into or out of the wetland is not altered and that no draining, dredging, filling, or grading occurs except as may be provided for in subsections [set forth] below." Id.

Fortieth argues that because the allowed uses generally cannot modify "the flow of water" into the wetland and still remain allowed uses exempt from permitting, any action that alters the flow of water into a wetland, including discharging stormwater, does require a permit.

Fortieth's argument is not persuasive. First, the VWR prohibit changes to flow in the specific context of allowed uses. Section 913(a)'s exemption of allowed uses from permitting is separate from its requirement that activities conducted in a wetland must acquire a permit. Further, the VWR, not § 913, introduce the limitation that allowed uses generally cannot alter water flow. We conclude that a regulatory limitation specific to allowed uses does not provide guidance as to what activities must obtain wetland permits.

Next, the prohibition on allowed uses that alter flow is itself qualified by the VWR. The VWR state that flow cannot be altered *except* as provided in a number of subsections. VWR § 6. For instance, the allowed use of operating a hydroelectric facility "may involve dredging, draining and/or altering the flow of water into or out of a wetland." See VWR § 6.7; see also VWR §§ 6.14, 6.15, 6.21. Thus, even some allowed uses exempted from permitting under § 913(a) can modify the flow of water in a wetland. The argument that any activity altering flow requires a permit because allowed uses cannot alter flow falters where certain allowed uses can modify flow. The VWR's prohibition on flow alterations is better conceived of as a limit on the scope of the allowed uses, ensuring that any change of flow, draining, or filling that occurs is only what is strictly necessary to support the allowed use.

Further, while not dispositive, an examination of the allowed uses defined in the VWR supports ANR's assertion that secondary impacts to a wetland from development outside of that wetland do not trigger ANR's permitting jurisdiction. All of the allowed uses relate to physical

activity occurring within a wetland or buffer zone. The allowed uses include activities like upgrading existing roads in the wetland; removing beaver dams; "silviculture activities . . . when occurring in any Class I wetland, the buffer zone for any Class I wetland and in any Class II wetland"; and even snowmobiling. See VWR §§ 6.2, 6.4, 6.5, 6.10, respectively. None of these contemplated actions relate to secondary, consequential impacts of development or activity comparable to the alleged stormwater discharges in this matter.[6]

Other provisions in § 913 support ANR's interpretation. The statute does not require a wetland permit for "any *construction* within a wetland . . . provided that the construction was completed prior to February 23, 1992 . . . ." 10 V.S.A. § 913(b)(2) (emphasis added). This subsection provides for preexisting nonconforming construction but would not similarly exempt preexisting secondary impacts like stormwater discharges.

Also, 3 V.S.A. § 2822(j)(26) establishes fees for wetland permit applications processed by ANR. The statute defines fees on a square-foot basis. See, e.g., 3 V.S.A. § 2822(j)(26)(A) (imposing a fee of "$0.75 per square foot of proposed impact to Class I or II wetlands."). The calculation of "impact" is based on the physical extent of the activity in the wetland. Fees are not determined in a way that accommodates secondary impacts of construction or the impact to a wetland's functions and values.[7]

---

[6] Fortieth also directs our attention to an ANR guidance document entitled "Vermont Wetlands Program: Logging Activities and Wetlands." Available at https://dec.vermont.gov/sites/dec/files/wsm/wetlands/docs/wl_2015_Silviculture_Guidance.pdf. The document states that "[logging] [a]ctivities in the wetland *or outside the wetland* that result in sediment entering the wetland through erosion" are not allowed uses because they will be considered fill or discharge. Id. at 1-2 (emphasis added). Fortieth asserts that this indicates activities taking place outside of the wetland that produce a secondary impact inside of the wetland require a permit.

This disregards a number of other references in the guidance document indicating that it is relevant to silviculture activities occurring *within* wetlands. See Id. Also, as this is ANR's own technical guidance, deference is due to its interpretation—that the guidance document reiterates acceptable management practices for logging in Vermont and does not create a broad permit requirement for the discharge of stormwater into wetlands. See VWR § 6.1(a) (requiring silviculture activities to comply with acceptable management practices to be an allowed use); see also Korrow, 2018 VT 39, ¶ 22 (recognizing that deference was due to ANR's interpretation of its own technical guidance document). Lastly, logging that occurs outside of a wetland but within its buffer zone would also qualify as an allowed use but for any sediment releases. See VWR §§ 6.1, 6.5. This situation fits the description of the guidance while still comporting with ANR's construction.

[7] ANR's wetland permit application implements the statutory directive by requiring applicants to estimate the number of square feet of wetland the proposed development or activity will affect. See Vermont Wetlands Program Permit Application Database Form, available at: https://dec.vermont.gov/sites/dec/files/wsm/wetlands/docs/VermontIndividualWetlandPermitApplicationMar2017.pdf.

Where the Legislature wanted to define ANR permit fees in terms of flow, it did so. See, e.g., 3 V.S.A. § 2822(j)(2)(A)(i)(I) (imposing fees for thermal discharge applications on a "per gallon permitted flow" basis). Notably, the Legislature also set specific application fees for stormwater discharge permits on a "per acre impervious area" basis. See 3 V.S.A. § 2822(j)(2)(A)(iii). This distinction also corroborates ANR's view that the Legislature intended consideration of stormwater impacts to remain within the stormwater discharge permitting scheme.

The relevant case law further supports ANR's interpretation. In Costco Stormwater, this Court evaluated a stormwater discharge application and wetland permit application, among others, related to the expansion of a Costco facility. Nos. 75-6-12 Vtec, et al. (Aug. 27, 2015). As part of our review, this Court evaluated ANR's assertion that the buffer for the relevant wetland should be 50 feet in width. Id. at 30. We stated that:

> We concur with ANR on its offered reasoning that the buffer for the Lot 5 wetland should be 50 feet in width, principally for a procedural reason. As explained below, we conclude that the currently-proposed Costco expansions will have no more than a minimal impact upon the wetland and the functions and values it serves. However, were we to conclude that the credible facts warrant a narrower buffer (as Costco suggests), *ANR's jurisdiction and authority over that wetland would only extend to the limits of that narrower buffer area*. Thus, any development that Costco proposed now or in the future that was outside that narrowed buffer would not be subject to review under the Vermont Wetlands Rules. We are particularly concerned about this procedural reality, given that Costco proposes development nearly next to a small portion of the wetland bank, in the area of its proposed gasoline sales facility.

Id. (emphasis added).

This Court's decision makes clear that the delineation of wetlands and their buffers is important for jurisdictional reasons. The Court had previously concluded that stormwater from Costco's property would infiltrate the relevant wetland. Id. at 19-21, 24. Because the stormwater impacts alone did not trigger ANR's wetland permitting jurisdiction, the Court was careful to recognize a boundary for the wetland buffer that included potential physical construction activities to secure that jurisdiction.

Further, in evaluating the need for a wetland permit, this Court focused on the construction activities Costco proposed within the wetland or its buffer, including installation of

a gasoline sales facility, erosion control measures, and an underground discharge pipe for stormwater.  Id. at 30-35.  The Court ultimately approved the proposal after concluding that the immediate consequences of the development would not impair the wetland.  Id.

The Vermont Supreme Court affirmed this Court's decision.  See Costco Stormwater, 2016 VT 86, ¶¶ 18-33.  In explaining its reasoning, the Supreme Court also concentrated on the consequences of those development activities occurring within the wetland and buffer.  Id.

Other precedent from this Court and the Vermont Supreme Court indicates that ANR and the judiciary have consistently addressed physical activities in wetlands or wetland buffers in enforcement and permitting actions, not secondary impacts removed from the location of development itself.  See In re Atwood-Hood PRD, Nos. 116-6-09 Vtec, 117-6-09 Vtec, slip op. at 14-15 (Vt. Envtl. Ct. Mar. 18, 2010) (Wright, J.) (discussing wetland permitting requirements generally and stating, "[t]he state statute regulating wetlands similarly prohibits development within Class II wetland buffers . . . ." (citing 10 V.S.A. § 913(a))); Agency of Nat. Res. v. McGee, 2016 VT 90, ¶¶ 4-5, 19, 203 Vt. 115 (focusing on activities carried out within the wetland for enforcement purposes); Agency of Nat. Res. v. Earth Constr., Inc., 165 Vt. 160, 166 (1996) (same); Persons, No. 97-6-10 Vtec at 7 (Aug. 1, 2012) (deciding an enforcement action in which the "only dispute" was whether the respondents knew or should have known that their excavating, dredging, filling, and construction work occurred inside the wetland boundary); Wellman, No. 2004-314 at 1-2 (Vt. Nov. 2004) (affirming an enforcement decision related to filling of a wetland).

ANR also notes the administrative difficulties that would arise if it adopted Fortieth's position.  See Korrow, 2018 VT 39, ¶ 20 (noting that deference can be owed to an agency's interpretation of policy).  If incidental impacts to a wetland deriving from development located elsewhere required a permit, uncertainty could result in the regulated community.  It would be unclear when compliance with the VWR was necessary.  Further, if any stormwater discharges that eventually reach a wetland prompt VWR review, an insupportable administrative burden could fall on ANR, the regulated community, neighbors to developments, and this Court.

For the above reasons, we conclude that ANR's interpretation of 10 V.S.A. § 913(a) is reasonable and furthers the Legislature's intent.  Wetland permits are not required when stormwater resulting from development outside of a wetland and its buffer indirectly discharges

into the wetland. While we afford ANR deference for the reasons discussed in Section I, we would reach the same result without this deference.

Accordingly, we **GRANT** ANR's and the City's motions for summary judgment on Questions 1, 2, 3, 6, 7, and 8.

Questions 4 and 5 raise issues related to the burden an applicant for a wetland permit must carry. See VWR § 9.5 ("Applicants for an individual wetland permit shall have the burden to show that a proposed activity . . . complies with these rules and will have no undue adverse effect on protected functions and values."). Because § 913(a) does not require a wetland permit for the City's stormwater discharges, the VWR do not require the City to satisfy these standards and Questions 4 and 5 are moot. Therefore, we **GRANT** ANR's and the City's motions on these Questions as well.

## III. Whether the Project's stormwater discharges comply with 10 V.S.A. § 913 and the VWR, VWQS, and CWA.

This leaves Question 9, which inquiries into the Project's compliance with the authorities generally relevant to water regulation. We first note that this expansive Question presents us with the kind of overbroad, all-inclusive inquiry that would typically render it invalid as written. See In re Atwood Planned Unit Dev., 2017 VT 16, ¶¶ 12-14, 204 Vt. 301. In the present matter, however, we conclude that these regulatory authorities are not applicable on the whole.

First, as addressed above, because any stormwater discharges to Wetlands G and Y do not require a wetland permit, ANR does not have jurisdiction under §913 and the VWR. Next, the separate permitting requirements for stormwater discharges ensure compliance with the VWQS. See 10 V.S.A. § 1264(h)(3). Thus, any assertions regarding the compliance of the Project's stormwater discharges with the VWQS belong in the parallel docket presently pending before the Court.

Further, the matter on appeal involves ANR's decision that the City does not need to obtain an additional wetland permit. The Project's general compliance with the VWQS was not raised or considered by ANR and is therefore not appropriately before us on appeal. See In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.) (citing 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g)) (recognizing that the scope of the

13

proceedings below limits our jurisdiction on appeal). Fortieth does not provide any argument as to why the VWQS should be considered in this docket.

Lastly, the CWA does not apply to ANR's permitting of activities within wetlands.[8] Section 404 of the CWA establishes a program to regulate the discharge of dredged or fill material into the waters of the United States, which include wetlands. 33 U.S.C. § 1344(a), (e), (f). The City does not propose the discharge of dredged or fill material into Wetlands G and Y, so there is no indication that the Project implicates § 404 in the first instance. Further, because the U. S. Army Corps of Engineers and the U. S. Environmental Protection Agency retain jurisdiction over the § 404 permitting program, ANR does not review activities in wetlands for compliance with the mandates of § 404.[9] Id. In addition, the CWA does not separately require states to issue wetland permits. See 33 U.S.C. § 1344(t). Fortieth does not provide any argument to the contrary.

The above discussion leads us to conclude that the regulatory authorities cited by Fortieth do not apply to any stormwater discharges of the Project into Wetlands G and Y. Therefore, we also **GRANT** ANR's and the City's motions for summary judgment with respect to Question 9, meaning we grant the motions in their entirety.

## Conclusion

For the reasons set forth above, we conclude that ANR's interpretation of the relevant regulatory authorities is reasonable, supported by case law, and logical given the interrelated statutory and regulatory provisions. Therefore, we conclude that the City is not required to obtain a wetland permit addressing the Project's potential off-site stormwater impacts to Wetlands G and Y. This Court **GRANTS** ANR's and the City's motions for summary judgment on Questions 1, 2, 3, 6, 7, and 8.

Given that Questions 4 and 5 relate to the burden on applicants seeking a wetland permit and no permit is required, the issues they raise are moot. Therefore, we **GRANT** ANR's and the City's motions on these Questions.

---

[8] Because the CWA's relevance in this appeal is a question of federal law, our deference to ANR ends here. See In re Stormwater NPDES Petition, 2006 VT 91, ¶ 13 n.2, 180 Vt. 261 (observing that "deference [to ANR] does not extend to interpretations of the scope and purpose of provisions of the CWA and implementing EPA regulations." (citing Jacobus v. Dep't of PATH, 2004 VT 70, ¶ 23, 177 VT. 496 (mem.))).

[9] As of the time of writing, Vermont is not one of the few states that have taken over administration of the CWA's § 404 wetlands permitting program pursuant to 33 U.S.C. § 1344(g).

Finally, we **GRANT** ANR's and the City's motions on Question 9 because 10 V.S.A. § 913 and the VWR do not apply where no wetland permit is required; the VWQS are satisfied through the regulations directly applicable to the stormwater discharges; and the CWA does not apply to ANR's permitting of wetlands.

This concludes the proceedings before this Court. A Judgement Order accompanies this Decision.

Electronically signed on June 4, 2019 at Chelsea, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division